1 **LUM, DANZIS, DRASCO & POSITAN, LLC**
103 Eisenhower Parkway
2 Roseland, NJ 07068
Telephone: (973) 403-9000
3 Fax: (973) 403-9021
(DD2022)(KO9378)
4

**RECEIVED**
**AUG 16 '2004**
AT 8:30
WILLIAM T. WALSH
CLERK ———M

5 **COVINGTON & BURLING**
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
6 Telephone:  (202) 662-6000
Fax:  (202) 662-6291
7 Attorneys for Plaintiffs

·8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE DISTRICT OF NEW JERSEY

10

| | |
|---|---|
| NATIONAL CITY BANK OF INDIANA, ) <br> FIRST FRANKLIN FINANCIAL ) <br> CORPORATION, and NATIONAL CITY ) <br> MORTGAGE CO., ) <br> ) <br> Plaintiffs, ) <br> -vs- ) <br> ) <br> ) <br> HOLLY C. BAKKE, ) <br> in her official capacity as Commissioner of the ) <br> New Jersey Department of Banking and ) <br> Insurance, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. <br> 3-04-3914 <br> (SRC) <br><br> **COMPLAINT FOR** <br> **DECLARATORY AND** <br> **INJUNCTIVE RELIEF** |

19

20           **INTRODCUTION**

21           1.     New Jersey law provides that subsidiaries of national banks must be

22 licensed by the New Jersey Department of Banking and Insurance ("Department"), through

23 Defendant Commissioner, and must be subject to the Department's regulatory, supervisory,

24 examination, and enforcement jurisdiction, in order to make and service residential mortgage

25 loans in New Jersey.  The Department, through Defendant Commissioner, has asserted that First

26 Franklin Financial Corporation ("First Franklin"), a wholly-owned operating subsidiary of a

27 national bank, has violated a New Jersey state law that bars the charging of any prepayment

28 penalty on adjustable rate mortgages ("ARMs").  On June 30, 2004, the Commissioner sent First

1  Franklin a letter requiring it to comply with that state-law requirement within five business days
2  with respect to a particular mortgage loan.  The Commissioner deemed First Franklin to be
3  subject to the jurisdiction and regulation of the Department, and stated that the Department's
4  jurisdiction covers all of First Franklin's loans in New Jersey.  In response, First Franklin
5  waived its right to collect a prepayment penalty with respect to that single loan, but reserved its
6  rights with respect to hundreds of other ARMs issued by First Franklin in New Jersey.

7          2.      On July 27, 2004, the Department notified First Franklin that pursuant to
8  the authority granted to the Commissioner by the laws of the State of New Jersey, it would
9  conduct an examination of First Franklin's operations commencing the week of August 18,
10  2004.  The notice of examination demands that First Franklin gather and produce extensive
11  documentation, including documentation regarding the prepayment fees it has charged on its
12  ARMs since January 1, 2002.

13          3.      This complaint seeks declaratory and injunctive relief on behalf of
14  National City Bank of Indiana a federally chartered national bank, and its wholly owned
15  operating subsidiaries First Franklin and National City Mortgage Co. ("NCMC"), owned and
16  operated by National City Bank of Indiana pursuant to the National Bank Act and regulations
17  promulgated under that Act by the Office of the Comptroller of the Currency ("OCC").

18          4.      The OCC is the federal agency responsible for interpreting and applying
19  the National Bank Act.  Under that Act and OCC regulations, the OCC has exclusive licensing,
20  regulatory, supervisory, examination, and enforcement authority over National City Bank of
21  Indiana, First Franklin, and NCMC.  Accordingly, the OCC can, and does, regulate and
22  regularly examine National City Bank of Indiana, First Franklin, and NCMC to enforce their
23  compliance with both federal and non-preempted state laws.

24          5.      Pursuant to 12 U.S.C. § 371(a), "[a]ny national banking association may
25  make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real
26  estate, subject to section 1828(o) of this title and such restrictions and requirements as the
27  Comptroller of the Currency may prescribe by regulation or order."  The OCC has promulgated
28  a regulation that expressly provides: "A national bank offering or purchasing ARM loans may

– 2 –

1    impose fees for prepayments notwithstanding any State law limitations to the contrary."

2    12 C.F.R. § 34.23. See also 12 C.F.R. §34.21 ("A national bank and its subsidiaries may make,

3    sell, purchase, participate in, or otherwise deal in ARM loans and interests therein without

4    regard to any state law limitations on those activities.").

5        6.  Pursuant to N.J. Stat. Ann. § 46:10B-2, "[p]repayment of a mortgage loan

6    may be made by or on behalf of a mortgagor at any time without penalty." In addition, pursuant

7    to N.J. Stat. Ann. § 46:10B-4, prepayment penalty provisions are unenforceable. Pursuant to

8    N.J. Stat. Ann. § 17:11C-22(c), a licensee may not "charge or exact directly or indirectly from

9    the mortgagor or any other person fees, commissions or charges not authorized by this act."

10   Pursuant to a regulation promulgated by Defendant Commissioners, a borrower "may repay a

11   first mortgage loan, second mortgage loan or consumer loan at any time without penalty."

12   N.J.Admin.Code, 3:15-10.1(b).

13       7.  Plaintiffs, faced with the Commissioner's demand that First Franklin

14   comply with the preempted New Jersey prohibition on prepayment penalties and submit to an

15   extensive examination in violation of the OCC's exclusive federal supervisory jurisdiction,

16   bring this suit against the Commissioner for declaratory and injunctive relief to vindicate the

17   federal rights of National City Bank of Indiana, First Franklin, and NCMC under the Supremacy

18   Clause of the U.S. Constitution, the National Bank Act, and implementing OCC regulations.

19            **JURISDICTION AND VENUE**

20       8.  This action is brought under the National Bank Act, the Supremacy

21   Clause of the United States Constitution, and 42 U.S.C. § 1983. The Court has jurisdiction over

22   this action pursuant to 28 U.S.C. § 1331, because it arises under the Constitution and laws of the

23   United States. In addition, jurisdiction is proper under 28 U.S.C. § 1343(a)(3), because

24   Defendant, under color of state law, seeks to deprive Plaintiffs of their federal constitutional

25   rights. This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201

26   and 2202.

27

28

1    9.    Venue in this district is proper under 28 U.S.C. § 1391(b)(1), because the

2    Defendant resides in this district.

3                                **THE PARTIES**

4    10.    National City Bank of Indiana is a national banking association organized

5    and existing under the National Bank Act, 12 U.S.C. § 21 *et seq*. National City Bank of Indiana

6    maintains its main office and principal place of business in Indianapolis, Indiana. National City

7    Bank of Indiana has no branches in New Jersey. Pursuant to the National Bank Act and

8    implementing OCC regulations, National City Bank of Indiana has established, wholly owns,

9    and operates First Franklin and NCMC as operating subsidiaries to conduct the majority of the

10   Bank's residential mortgage lending.

11   11.    First Franklin is organized as an operating subsidiary of National City

12   Bank of Indiana pursuant to OCC regulations issued under the National Bank Act. First

13   Franklin is incorporated in Delaware and has its principal place of business in San Jose,

14   California. First Franklin does residential mortgage lending business throughout the United

15   States, including New Jersey. First Franklin provides ARMs in New Jersey to which the New

16   Jersey prepayment restriction purportedly applies.

17   12.    NCMC is organized as an operating subsidiary of National City Bank of

18   Indiana pursuant to OCC regulations issued under the National Bank Act. NCMC is

19   incorporated in Ohio and has its principal place of business in Ohio. NCMC does residential

20   mortgage lending business throughout the United States, including New Jersey.

21   13.    Defendant Holly C. Bakke is the Commissioner of the New Jersey

22   Department of Banking and Insurance. As such, she is the state official charged under New

23   Jersey law with enforcing the state statutes providing for the licensing, regulation, supervision,

24   examination, and enforcement of applicable laws against New Jersey residential mortgage

25   lenders that are subject to New Jersey's mortgage licensing laws. *See* N.J. Stat. Ann. § 17:11C-

26   1 *et seq*. ("Licensed Lenders Act"). The Commissioner is also the state official charged with

27

28

                                        – 4 –

1    enforcing the New Jersey prepayment penalty restriction against New Jersey residential

2    mortgage lenders subject to New Jersey law. *Id.* §§ 17:11C-47-48.

3                    **THE NATIONAL BANK ACT AND OCC REGULATIONS**

4              14.    National banks are federally-chartered institutions created under and

5    governed by the National Bank Act, 12 U.S.C. § 21 *et seq.*

6              15.    Under the National Bank Act and other federal banking laws, the OCC

7    has exclusive licensing, regulatory, supervisory, examination, and enforcement authority with

8    respect to national banks' compliance with both federal and non-preempted state laws. *See* 12

9    U.S.C. §§ 24(Seventh), 484(a), 1818(b); *see also* 12 C.F.R. § 7.4000.

10             16.    Congress has authorized national banks to receive deposits, loan money,

11   and to exercise "all such incidental powers as shall be necessary to carry on the business of

12   banking." 12 U.S.C. § 24(Seventh). These incidental powers under 12 U.S.C. § 24(Seventh)

13   include the authority to provide banking services through operating subsidiaries.

14             17.    Under an OCC regulation interpreting and implementing § 24(Seventh),

15   12 C.F.R. § 5.34, national banks are expressly authorized to establish and own operating

16   subsidiaries, which may conduct only activities that are lawful activities for the parent national

17   bank itself. 12 C.F.R. § 5.34(d)(1). The OCC's operating-subsidiary regulation further provides

18   for a licensing application to and approval from the OCC before an operating subsidiary is

19   established or acquired by a national bank. *See, e.g., id.* § 5.34(e)(5). The OCC's regulation

20   also makes clear that operating subsidiaries are subject to the OCC's ongoing supervision,

21   regulation, examination, and enforcement authority. *See id.* § 5.34(e)(3).

22             18.    Because operating subsidiaries conduct only national bank-authorized

23   activities, and therefore function as separately-incorporated divisions or departments of the

24   national bank itself, and because operating subsidiaries are subject to ongoing licensing,

25   regulation, supervision, examination, and enforcement by the OCC, the OCC's regulations

26   further provide that, "[u]nless otherwise provided by Federal law or OCC regulation, State laws

27

28

– 5 –

1   apply to national bank operating subsidiaries to the same extent that those laws apply to the

2   parent national bank." 12 C.F.R. § 7.4006.

3           19.    Under 12 U.S.C. § 484(a), "[n]o national bank shall be subject to any

4   visitorial powers except as authorized by Federal law, vested in the courts of justice or such as

5   shall be, or have been exercised or directed by Congress or by either House thereof or by any

6   committee of Congress or of either House duly authorized." Section 484(b) provides a limited

7   exemption to this exclusive federal regulatory, supervisory, and examination jurisdiction of

8   national banks but only "to ensure compliance with applicable State unclaimed property or

9   escheat laws upon reasonable cause to believe that the bank has failed to comply with such

10   laws." 12 U.S.C. § 484(b).

11           20.    Interpreting § 484, the OCC's regulations provide that "[o]nly the OCC

12   or an authorized representative of the OCC may exercise visitorial powers with respect to

13   national banks, except as provided [in the OCC's regulation interpreting 12 U.S.C. § 484(b)].

14   State officials may not exercise visitorial powers with respect to national banks, such as

15   conducting examinations, inspecting or requiring the production of books or records of national

16   banks, or prosecuting enforcement actions, except in limited circumstances authorized by

17   federal law." 12 C.F.R. § 7.4000(a)(1). The OCC's regulation defines "visitorial powers" to

18   include "[e]xamination of a bank"; "[i]nspection of a bank's books and records"; "[r]egulation

19   and supervision of activities authorized or permitted pursuant to federal banking law"; and

20   "[e]nforcing compliance with any applicable federal or state laws concerning those activities."

21   *Id.* § 7.4000(a)(2). Further, by virtue of 12 C.F.R. § 7.4006, the protections afforded to national

22   banks from state licensing, regulation, supervision, examination, and enforcement also apply to

23   operating subsidiaries of national banks.

24           21.    The First Senior Deputy Comptroller and Chief Counsel of the OCC has

25   issued a letter confirming that "pursuant to 12 U.S.C. § 484, and 12 C.F.R. §§ 5.34(e)(3) and

26   7.4006, the OCC has exclusive visitorial authority over national banks and their operating

27   subsidiaries except where *Federal* law provides otherwise." (Exhibit 1 hereto, p. 2.) The

28   OCC's letter continues: "As a result, States are precluded from examining or requiring

-6-

1    information from national banks or their operating subsidiaries." *Id.* The OCC explains that "it

2    is well established that a State may not condition a national bank's exercise of a permissible

3    Federal power on obtaining the State's prior approval, including the imposition of State

4    licensing requirements as a predicate to the exercise of that power. The result is the same

5    whether the national bank exercises the power directly, or through an operating subsidiary that

6    has been licensed by the OCC. In both cases, the bank, or the operating subsidiary, has obtained

7    a *Federal* license to conduct its business." *Id.* at 6. This letter follows earlier letters issued by

8    the OCC to the same effect.

9          22.    In addition, the OCC has filed briefs as *amicus curiae*·in *Wells Fargo*

10   *Bank, N.A. v. Boutris*, 265 F. Supp. 2d 1162 (E.D. Cal. 2003), *National City Bank v. Boutris*,

11   No. CIV. S-03-0655 GEB, 2003 WL 21536818 (E.D.Cal. Jul 02, 2003), *Wachovia Bank, N.A. v.*

12   *Burke*, 319 F. Supp. 2d 275 (D. Conn. 2004), and *Wachovia Bank, N.A. et al. v. Watters*, No.

13   5:03-cv-00105-RHB (W.D. Mich. July 21, 2003), confirming that operating subsidiaries of

14   national banks are subject to the exclusive visitorial powers of the OCC and states cannot

15   exercise any licensing, regulatory, supervisory, or enforcement authority over such entities.

16   Accordingly, the OCC argued in its briefs, efforts by state banking officials to exercise visitorial

17   powers over operating subsidiaries of national banks, and to interfere with their federally-

18   authorized banking activities, are preempted.

19         23.    Pursuant to 12 U.S.C. § 371(a), "[a]ny national banking association may

20   make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real

21   estate, subject to section 1828(*o*) of this title and such restrictions and requirements as the

22   Comptroller of the Currency may prescribe by regulation or order." The OCC has promulgated

23   a regulation, codified at 12 C.F.R. § 34.23, that expressly provides: "A national bank offering

24   or purchasing ARM loans may impose fees for prepayments notwithstanding any State law

25   limitations to the contrary." See also 12 C.F.R. § 34.21 ("A national bank and its subsidiaries

26   may make, sell, purchase, participate in, or otherwise deal in ARM loans and interests therein

27   without regard to any State law limitations on those activities.").

28

24. Pursuant to N.J. Stat. Ann. § 46:10B-2, "[p]repayment of a mortgage loan may be made by or on behalf of a mortgagor at any time without penalty." In addition, N.J. Stat. Ann. § 46:10B-4 provides that prepayment penalty provisions in mortgages issued by national bank operating subsidiaries are unenforceable. Pursuant to N.J. Stat. Ann. § 17:11C-22(c), a licensee may not "charge or exact directly or indirectly from the mortgagor or any other person fees, commissions or charges not authorized by this act." *See also id.* § 17:11C-23 (prohibiting licensees from charging any fee not authorized by the commissioner by regulation); N.J.Admin.Code 3:15-10.1(b)(allowing borrower to prepay mortgage at anytime without interest).

25. The OCC has issued a letter confirming that national banks may impose prepayment fees in connection with purchase money arm loans under the OCC's ARM regulation notwithstanding state law. *See* Letter of Nov. 4, 1999 from Eric Thompson, Director, Bank Activities and Structure, to Gregory J. Pulles, General Counsel, TCF Financial Corporation. The letter confirms that 12 U.S.C. § 371 "specifically provides authority for national banks to make real estate loans subject to OCC regulations and orders," and "[t]he OCC ARM regulations themselves contain an express preemption of state law restrictions on prepayment fees." (Exhibit 2 hereto, at pp. 1-2). The letter explains that the OCC "has long recognized that the ability to charge prepayment fees in connection with ARM loans provides lenders and borrowers with additional flexibility," and this "could encourage the development of ARMs with relatively slow-moving interest rate indexes and long adjustment periods." *Id.*

26. Title 17:11C, N.J.Stat. Ann., entitled "Licensed Lenders" includes provisions concerning licensing requirements, the Commissioner's examination authority, and enforcement of state law. Mortgage bankers, mortgage brokers, and persons engaged in the secondary mortgage loan business in New Jersey, among others, are required to apply for and obtain a state license. National banks are exempted from this licensing requirement, but their subsidiaries are not. N.J. Stat. Ann. §§ 17:11C-4(a), 17:11C-5(a). The Commissioner is authorized to conduct examinations of any licensed lender. *Id.* §17:11C-42. The Commissioner may suspend or revoke a license for cause. *Id.* § 17:11C-18. In addition, the Commissioner is

– 8 –

1 also authorized to seek an injunction on behalf of the State against a person or institution to

2 enjoin continuing practices that violate New Jersey law. *Id.* § 17:11C-47. The Commissioner

3 may also seek penalties of up to $5,000 for each violation and restitution of the fee. *Id.*

4 § 17:11C-48. Pursuant to N.J. Stat. Ann. § 46:10B-5, the borrower is authorized to bring an

5 action seeking to recover a prepayment penalty, plus interest, in state court.

6         **THE PRESENT CONTROVERSY**

7      27.  National City Bank of Indiana owns operating subsidiaries, First Franklin

8 and NCMC, to undertake a portion of the Bank's residential mortgage lending business

9 throughout the United States, including New Jersey. In doing so, the Bank has exercised its

10 federal authority under 12 U.S.C. § 24(Seventh), and OCC regulations interpreting that statute,

11 12 C.F.R. § 5.34, by applying for and receiving the OCC's permission to establish, acquire, and

12 operate First Franklin and NCMC.

13      28.  First Franklin and NCMC function as separately incorporated

14 departments or divisions of the Bank. First Franklin and NCMC, just like National City Bank of

15 Indiana itself, are each subject to ongoing licensing, regulation, supervision, and enforcement by

16 the OCC, and have been examined by the OCC on multiple occasions, with respect to its

17 compliance with both federal and non-preempted state laws.

18      29.  New Jersey law provides that First Franklin and NCMC nonetheless are

19 required to hold a license from the Commissioner in order to engage in the residential mortgage

20 business in New Jersey. First Franklin and NCMC presently hold such a license, and the

21 Commissioner has asserted full regulatory, supervisory, examination, and enforcement authority

22 over First Franklin. The Commissioner has conducted audits and examinations of First Franklin

23 and NCMC and required First Franklin and NCMC to submit periodic reports of condition to

24 her or a designated official at the Department.

25      30.  By letter dated May 21, 2004, the Department informed First Franklin

26 that it had received a complaint from a borrower concerning a prepayment penalty provision in

27 an ARM loan agreement entered into with First Franklin. The letter stated that "[a]s of July 1,

28

            – 9 –

1  2003, all New Jersey licensed lenders are subject to the aforementioned prepayment penalty law

2  and can no longer claim federal preemption pursuant to the Alternative Transactions Parity Act

3  of 1982." ("Parity Act") (Exhibit 3 hereto).  The letter asked First Franklin to provide a written

4  response to the complaint, including extensive documentation.

5          31.    First Franklin responded in a letter dated June 15, 2004, enclosing the

6  documentation requested by the Department and advising the Department that First Franklin is

7  not asserting preemption of New Jersey's prepayment penalty provision under the Parity Act.

8  Instead, First Franklin explained, First Franklin as an operating subsidiary of a national bank, is

9  subject to the regulations of the OCC promulgated pursuant to the National Bank Act.  Pursuant

10 to 12 U.S.C. § 371, the OCC has issued 12 C.F.R. § 34.23, which preempts state limits on

11 prepayment penalties for adjustable rate mortgage loans.  Consequently, the letter concludes, the

12 New Jersey restrictions on prepayment penalties are not applicable to Ms. Jones' mortgage loan.

13 (Exhibit 4 hereto).

14         32.    By letter dated June 30, 2004, the Department stated that it had reviewed

15 First Franklin's letter of June 15, 2004, and that "the Department does not recognize your

16 Corporation's claim of federal preemption over New Jersey Statutes and Regulations predicated

17 on your status as an operating subsidiary of a national bank, National City Bank of Indiana,

18 pursuant to Section 371 of the National Bank Act." (Exhibit 5 hereto)  The letter further states:

19 "Your Corporation is subject to the same New Jersey mortgage banking statutes and regulations

20 as any other licensee."  The letter continues:  "First Franklin Corporation is deemed subject to

21 the jurisdiction and regulation of the Department, [and] this jurisdiction covers all New Jersey

22 loans closed including that of Ms. Jones.  Your Corporation is in violation of '**N.J.S.A. 46:10B-**

23 **2. Prepayment of mortgage loan without penalty**.'"  The letter further states:  "**First**

24 **Franklin Financial Corporation must immediately remove the subject prepayment penalty**

25 **provision assessing a prepayment penalty from the consumer's mortgage loan note within**

26 **five (5) business days upon receipt of this correspondence**.  The Division of Banking will

27 seriously consider litigation of this matter if your Corporation decides to challenge the subject

28 Directive." (Emphasis in original).

33.     On July 8, 2004, First Franklin responded with a letter to the Department stating that, for the reasons explained in its letter of June 15, it "continues to believe that the prepayment penalty is authorized by federal law." (Exhibit 6 hereto). "[I]n an effort to address the particular situation presented," First Franklin agreed to pay any prepayment charge assessed under the borrower's note. *Id.* First Franklin emphasized that its action was "without prejudice to its rights under federal law with respect to any other mortgage loan." *Id.*

34.     On July 27, 2004, the Department notified First Franklin that "[p]ursuant to the authority granted to the Commissioner by the laws of the State of New Jersey," it intends to conduct an examination of First Franklin's operations commencing the week of August 18, 2004. (Exhibit 7 hereto).  The notice of examination demands that First Franklin produce extensive documentation, including regarding the prepayment fees it has charged on its ARMs since January 1, 2002, and indicates that "[f]ailure to have the requested information ready for the examiner" could result in "a lower rating for your company, a lengthier examination and more frequent monitoring."

35.     A case or controversy between the parties exists requiring resolution by this Court.

## CLAIMS FOR RELIEF

### COUNT I

**Declaratory and Injunctive Relief:**

**Preemption of New Jersey Licensed Lenders Act by**

**12 U.S.C. §§ 24(Seventh), 484 and 12 C.F.R. § 7.4006**

36.     Plaintiffs incorporate and reallege each and every allegation contained in each of the preceding paragraphs of this Complaint as though fully set forth herein.

37.     Under the National Bank Act and other federal banking laws as well as OCC regulations interpreting those laws, the OCC has exclusive licensing, regulatory, supervisory, examination, and enforcement authority with respect to national banks' compliance with both federal and non-preempted state laws. *See* 12 U.S.C. §§ 24(Seventh), 484(a),

1  1818(b); 12 C.F.R. § 7.4000.  National banks are not required to obtain or hold state licenses in
2  order to do business in any state.

3  38.  Under OCC regulation 12 C.F.R. § 5.34, national banks may establish,
4  own, and operate operating subsidiaries to undertake only those activities that are authorized for
5  a national bank itself.  This regulation provides that an operating subsidiary is also subject to
6  ongoing licensing, regulatory, supervisory, examination, and enforcement authority by the OCC
7  with respect to such subsidiary's compliance with both federal and non-preempted state laws.

8  39.  Another OCC regulation further prescribes that "[u]nless otherwise
9  provided by Federal law or OCC regulation, State laws apply to national bank operating
10 subsidiaries to the same extent that those laws apply to the parent national bank."  12 C.F.R.
11 § 7.4006.

12 40.  The OCC has recently confirmed in interpretive letters and briefs as
13 *amicus curiae* that, under 12 C.F.R. § 7.4006, an operating subsidiary is subject to the exclusive
14 regulatory, supervisory, examination, and enforcement authority of the OCC, with respect to its
15 compliance with both federal and non-preempted state laws, and is therefore not subject to such
16 licensing, regulation, supervision, examination, and enforcement authority of a state regulator
17 like the Commissioner.  In prior cases, courts have found that "[t]he OCC's amicus brief and
18 interpretive letter appear to be 'both persuasive and consistent with the National Bank Act and
19 OCC regulations and thus at least 'entitled to respect.'"  *Wells Fargo Bank, N.A. v. Boutris*, 252
20 F. Supp. 2d 1065, 1072 (E.D. Cal. 2003) (quoting *Bank of America v. City and County of San
21 Francisco*, 309 F.3d 551, 563 n.7 (9th Cir. 2002)).

22 41.  The New Jersey Licensed Lenders Act, in particular Sections 17:C11-3,
23 47-49, which subject national banks' operating subsidiaries like First Franklin to ongoing
24 licensing, regulation, supervision, examination, and enforcement by the Commissioner, is
25 preempted as it applies to national bank operating subsidiaries by the exclusive federal
26 licensing, regulatory, supervisory, examination, and enforcement powers of the OCC.

27 42.  Under federal law, the OCC is the exclusive enforcer of all laws against
28 national banks as well as their operating subsidiaries.  First Franklin and NCMC, as operating

– 12 –

1  subsidiaries of a national bank, need not hold a license from State of New Jersey in order to

2  engage in the residential mortgage lending and servicing business in New Jersey.  The OCC has

3  granted a license to National City under 12 C.F.R. § 5.34 to conduct mortgage lending activities

4  through First Franklin and NCMC.

5          43.     N.J. Stat. Ann. §§ 17:C11-3, 47-49, as applied to national banks'

6  operating subsidiaries, for purposes of empowering the Commissioner to regulate, supervise, or

7  act as an enforcement official is preempted under Article VI of the United States Constitution,

8  by the National Bank Act, 12 U.S.C. §§ 24(Seventh) and 484, and by other provisions of the

9  federal banking laws and OCC implementing regulations, because the OCC has exclusive

10  licensing, regulatory, supervisory, examination, and enforcement authority over national banks'

11  operating subsidiaries.

12                          **COUNT II**

13                  **Declaratory and Injunctive Relief:**

14          **Preemption of New Jersey Licensed Lenders Act by**

15                  **12 U.S.C. §§ 24(Seventh) and 484**

16          44.     Plaintiffs incorporate and reallege each and every allegation contained in

17  each of the preceding paragraphs of this Complaint as though fully set forth herein.

18          45.     National banks have authority under the National Bank Act to receive

19  deposits, loan money, and to exercise "all such incidental powers as shall be necessary to carry

20  on the business of banking."  12 U.S.C. § 24(Seventh).

21          46.     The OCC's regulations implementing the National Bank Act provide that

22  national banks are expressly authorized to establish and own operating subsidiaries, which are

23  permitted to conduct only those activities that are lawful activities for the parent national bank

24  itself.  12 C.F.R. § 5.34(d)(1).  The OCC's regulations further provide that a national bank's

25  operating subsidiary may exercise the parent national bank's enumerated federal lending and

26  incidental powers to engage in the "business of banking" under 12 U.S.C. § 24(Seventh) on the

27

28

– 13 –

1   same basis as the parent bank. *See* 12 C.F.R. §§ 5.34(e)(1), 7.4006. This interpretation was

2   confirmed in recent OCC interpretive letters and in *amicus* briefs.

3            47.    New Jersey law subjects national banks' operating subsidiaries to

4   ongoing state licensing, regulation, supervision, examination, and enforcement authority by the

5   Commissioner in the face of the OCC's exclusive licensing, regulation, supervision,

6   examination, and enforcement authority regarding such subsidiaries. By seeking to subject

7   national banks' operating subsidiaries to such additional, ongoing state licensing, regulation,

8   supervision, examination, and enforcement authority, New Jersey law directly conflicts with

9   national banks' ability to conduct their activities through federally licensed operating

10   subsidiaries, including such banks' lending activities, as authorized by the National Bank Act

11   and OCC regulations adopted pursuant to that Act.

12            48.    The New Jersey Licensed Lenders Act, in particular N.J. Stat. Ann.

13   §§ 17:C11-3, 47-49, therefore is preempted as applied to national banks' conduct of their

14   federally authorized activities through operating subsidiaries under Article VI of the United

15   States Constitution and by 12 U.S.C. § 24(Seventh) and other provisions of the National Bank

16   Act and federal banking laws, as they are implemented by the OCC's regulations, including 12

17   C.F.R. §§ 5.34 and 7.4006.

18                        **COUNT III**

19                 **Declaratory and Injunctive Relief:**

20   **Preemption of N.J.S.A. 46:10B-2 and 10B-4 and N.J.Admin.Code 3:15-10.1(b) by**

21               **12 U.S.C. § 371 and 12 C.F.R. § 34.23**

22            49.    Plaintiffs incorporate and reallege each and every allegation contained in

23   each of the preceding paragraphs of this complaint as fully set forth herein.

24            50.    Pursuant to 12 U.S.C. § 371(a), "[a]ny national banking association may

25   make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real

26   estate, subject to section 1828(*o*) of this title and such restrictions and requirements as the

27   Comptroller of the Currency may prescribe by regulation or order. The OCC has promulgated a

28

1   regulation, codified at 12 C.F.R. § 34.23, that expressly provides: "A national bank offering or

2   purchasing ARM loans may impose fees for prepayments notwithstanding any State law

3   limitations to the contrary."

4          51.    In conflict with the express terms of 12 C.F.R. § 34.23, N.J. Stat Ann.

5   46:10B-2 provides that "[p]repayment of a mortgage loan may be made by or on behalf of a

6   mortgagor at any time without penalty" and § 46:10B-4 provides that such prepayment

7   provisions are unenforceable.  Similarly, N.J.Admin.Code 3:15-10.1(b) provides that a borrower

8   may repay a mortgage loan "at any time without penalty".

9          52.    N.J. Stat. Ann. §§ 46-10B-2 and 10B-4, and N.J.Admin.Code 3:15-

10  10.1(b), are therefore expressly preempted by 12 C.F.R. § 34.23 and as a result are invalid under

11  Article VI of the United States Constitution.

12                              **PRAYER FOR RELIEF**

13

14         WHEREFORE, Plaintiffs, National City Bank of Indiana, First Franklin

15  Financial Corporation and National City Mortgage Co., demand judgment against defendant,

16  Holly C. Bakke, in her official capacity as Commissioner of the New Jersey Department of

17  Banking and Insurance, for the following relief:

18         A.     Entering a judgment declaring that the New Jersey Licensed Lenders Act,

19  as applied to national banks' operating subsidiaries, and as applied to national banks' conduct of

20  their federally authorized activities through such subsidiaries, is null and void and unenforceable

21  because it is preempted under Article VI of the United States Constitution, by the National Bank

22  Act, and by implementing OCC regulations;

23         B.     Entering a judgment declaring that the N.J. Stat. Ann. §§ 46:10B-2 and

24  10B-4 and N.J.Admin.Code 3:15-10.1(b), are null and void and unenforceable because it is

25  expressly preempted under Article VI of the United States Constitution by 12 U.S.C. § 371 and

26  12 C.F.R. § 34.23;

27

28

– 15 –

          C.       Entering a permanent injunction, Plaintiffs having no adequate remedy at law and suffering irreparable injury as a result of these unconstitutional state laws, enjoining Defendant and his agents from enforcing or taking any action to enforce the New Jersey Licensed Lender Act against Plaintiffs; from taking any action to prevent or interfere with, both directly and indirectly, Plaintiffs' business operations in New Jersey (including taking any actions to penalize Plaintiffs); and from otherwise exercising visitorial powers over Plaintiffs;

          D.       Entering a preliminary injunction pending final resolution of this action, Plaintiffs having no adequate remedy at law and suffering irreparable injury as a result of these unconstitutional state laws, enjoining Defendant and his agents from enforcing or taking any action to enforce the New Jersey Licensed Lenders Act, against Plaintiffs; from taking any action to prevent or interfere with, both directly and indirectly, Plaintiffs' business operations in New Jersey (including taking any actions to penalize Plaintiffs); and from otherwise exercising visitorial powers over Plaintiffs;

          E.       Awarding Plaintiffs their reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

          F.       Granting Plaintiffs such other and further relief, including costs, as the Court may deem just and proper.

1

2

3

4

5

6

7

. 8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**LUM, DANZIS, DRASCO & POSITAN, LLC**
Attorneys for Plaintiffs, National City Bank of Indiana,
First Franklin Financial Corporation and National City
Mortgage Co.

By: _____
      DENNIS J. DRASCO  (2022)
      A Member of the Firm

E. EDWARD BRUCE (*pro hac vice* pending)
STUART C. STOCK (*pro hac vice* pending)
ROBERT A. LONG, Jr. (*pro hac vice* pending)
EMILY JOHNSON HENN (*pro hac vice* pending)
BENJAMIN C. BLOCK (*pro hac vice* pending)

**COVINGTON & BURLING**
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20044
Telephone: (202) 662-6000
Fax: (202) 662-6291

Dated:  August 16, 2004

1

## CERTIFICATION PURSUANT TO L.Civ.R.11.2

2

3          Pursuant to L.Civ.R.11.2, the undersigned certifies that the matter in controversy is not the

4    subject of any other action pending in any court or of a pending arbitration proceeding.  Nor is any

5    other action or arbitration proceeding contemplated.

6

7

. 8

9

10

11                                            DENNIS J. DRASCO  (2022)

12

13    DATED:  August 16, 2004

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1